UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHIRLEY A. DARBY,

                      Plaintiff,

    v.                                      **DECISION AND ORDER**
                                                12-CV-305S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.[1]

      1.      In this action, Plaintiff Shirley Darby challenges an Administrative Law Judge's ("ALJ") determination that she was not disabled within the meaning of the Social Security Act ("the Act").

      2.      Darby filed applications for benefits under Titles II and XVI of the Act on October 9, 2008, alleging an inability to work since August 16, 2006 due to asthma, arthritis, a right foot injury, depression, and gastro-reflux. The Commissioner of Social Security ("Commissioner") denied the initial applications and, as a result, Darby requested an administrative hearing. Administrative Law Judge ("ALJ") Joseph Grow held a hearing on July 7, 2010, at which Darby appeared with counsel and testified. The ALJ considered the case *de novo*, and on August 20, 2010, issued a decision denying Darby's application for benefits. Darby then filed a request for review with the Appeals Council, which denied her request on February 17, 2012. Darby filed this civil action on April 11, 2012,

---

[1] Although this action was commenced against Commissioner Michael Astrue, the parties agree that on February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), a public officer's successor is automatically substituted as a party.

1

challenging the Commissioner's final decision.[2]

3. On December 17, 2012, Darby and the Commissioner each filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The motions were fully briefed on February 3, 2013, at which time this Court took the matter under advisement without oral argument. For the reasons set forth below, the Commissioner's motion is granted, and Darby's motion is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. *See* Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See* Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's

---

[2] The ALJ's August 20, 2010 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); *see also*, Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.	The claimant bears the burden of proof through the first four steps. If the claimant meets that burden and shows that [s]he can no longer perform the work [s]he once did, the burden shifts to the Commissioner for the fifth and final step. *See* Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  This final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Next, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.	In this case, the ALJ made the following findings with regard to the five-step process: (1) Darby has not engaged in substantial gainful activity since August 16, 2006 (R. 14);[3] (2) her degenerative disc disease, right knee impairment, asthma, depression, and obesity are severe impairments within the meaning of the Act (R. 14); (3) these impairments do not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 14); (4) Darby does not have the residual functional capacity to perform her past relevant work as a housekeeper (R. 18); and (5) jobs exist in significant numbers in the national economy that an individual of Darby's age, education, work experience, and residual functional capacity can perform (R. 18). The ALJ found that Darby had the residual functional capacity to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with limitations (R. 16), and ultimately concluded that she had not been under a disability as defined by the Act.  (R. 19.)

---

[3] Citations to the underlying administrative record are designated as "R."

10. Darby first maintains the ALJ's residual functional capacity finding is not supported by substantial evidence due to his failures to: (1) follow the treating physician rule, (2) make function-by-function findings relative to her limitations, and (3) apply appropriate legal standards in evaluating her credibility. The alleged deficiencies are addressed in turn.

11. Under the "treating physician's rule," the ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2)[4]; *see also* Green-Younger v. Barnhart, 335 F.3d 99 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). Darby's treating physician, Chester H. Fox, M.D., completed a Residual Functional Capacity Questionnaire on May 10, 2009, in which he referenced her COPD and chronic back pain, and opined that she was disabled from full time competitive employment. (R. 378-79.) Darby maintains the ALJ improperly focused on her COPD and disregarded Dr. Fox's opinion that her inability to work was also due, in part, to her back pain.

Contrary to Darby's assertion, the ALJ did expressly consider Dr. Fox's opinion, but found:

> the weight of the medical evidence, in particular objective medical evidence, does not establish the claimant's back pain as a disabling impairment. The claimant's medical history only shows one lumbar spine x-ray from March 2009, in which Dr. Liebman noted some "facet joint arthropathy."

(R. 18; x-ray report at R. 318.) The ALJ also referred to a January 14, 2009 treatment

---

[4] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003). Effective March 26, 2012, the Commissioner amended §§ 404.1527 and 416.927. 77 FR 10651, 10656. Citations in this opinion will refer to the regulation(s) in effect when this claim was adjudicated.

report, in which Dr. Fox described Darby's back pain, following an exacerbating event, as localized with no radiculopathy. (R. 17, citing R. 303.)

Moreover, while Dr. Fox's records from September 8, 2006 through June 22, 2010 frequently noted Darby had limited range of back motion and complained of back pain, he also observed that she walked with a normal gait, her back was symmetrical, and she had normal posture and muscle tone. (R. 253-304, 419-458.) He noted on at least three occasions that her back pain was controlled with medications (R. 276, 427, 437), and opined that neither the pain nor medication affected her ability to concentrate (R. 379). One month after stating that Darby was unable to work, Dr. Fox approved her return to child care work with a 10 pound lifting limitation. (R. 437-38.) A consultative physician who examined Darby on March 9, 2009, and ordered the spine x-ray mentioned above, found no obvious physical limitations, but opined that Darby would require comfort breaks if she engaged in repetitive bending, twisting, kneeling, squatting, crawling, and climbing, or the handling of markedly heavy objects. (R. 313-17.) On the Court's review of the record, it is clear the ALJ expressly considered Dr. Fox's opinion, and also that his decision not to accord the opinion controlling weight is supported by substantial evidence.[5]

12.   Social Security policy interpretation ruling SSR 96-8p states that "[e]xertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling." 1996 SSR LEXIS 5, at *2. The ruling further provides that, prior to assessing a claimant's residual functional capacity, "[e]ach function must be considered separately." *Id*.

---

[5] Darby maintains the ALJ also failed to consider the other ailments Dr. Fox treated—to wit, her obesity, right knee impairment, and depression. Dr. Fox did not identify any of these conditions in his Residual Functional Capacity Questionnaire as a factor contributing to her inability to work. Moreover, the ALJ acknowledged and discussed each of these impairments in his decision. (R. 17-18.)

There is no dispute the ALJ did not conduct a function-by-function analysis with regard to the amount of weight Darby could lift or carry, or how long she could sit, stand, or walk. Darby correctly notes in her brief that district courts in this Circuit have differed on whether an ALJ's failure to follow the policy guidance is *per se* grounds for remand or whether it may constitute harmless error, and she argues that remand of this case is warranted under either standard. (Docket No. 13-1 at 12.) Recently, however, the Second Circuit confirmed that an ALJ need not separately discuss a claimant's ability to perform each exertional function, so long as the residual functional capacity determination is set forth with sufficient specificity to permit the court to decide whether it is supported by substantial evidence. Campbell v. Astrue, 465 Fed. Appx. 4, 6 (2d Cir. 2012) (summary order) (*citing* Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)); *see also*, Murphy v. Astrue, No. 12-CV-6271MAT, 2013 U.S. Dist. LEXIS 51088, at *16-18 (W.D.N.Y. Apr. 9, 2013); Lloyd v. Astrue, No. 12-CV-122S, 2013 U.S. Dist. LEXIS 25794, at *10 (W.D.N.Y. Feb. 23, 2013) (failure of ALJ to conduct function-by-function assessment is not *ipso facto* ground for remand). Because the assessment here meets that standard, remand is not warranted.

ALJ Grow concluded that Darby's depression also was a severe impairment. An ALJ must examine the non-exertional limitations of such conditions under regulations specific to mental impairments. 20 C.F.R. § 404.1520a. Here, it is evident the ALJ applied the requisite analysis. He considered the severity of Darby's medically-determinable mental impairment under the four criteria specified in 20 C.F.R. § 404.1520a(c)(3): (1) activities

of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation; concluded the impairment did not meet or equal any listed mental disorder; and went on to assess residual functional capacity relative to the impairment. § 404.1520a(d)(3). The assessment that Darby can perform light work "limited to simple, routine, and repetitive tasks" (R. 16) is supported by substantial evidence, including reports from a psychiatric consultative examiner and a state psychiatric review examiner (R. 309-12, 324-37). In sum, the Court finds no error in the ALJ's assessment of either her exertional or non-exertional limitations.

13.    Darby also challenges the ALJ's assessment of her credibility. When considering a claimant's symptoms, an ALJ must follow a two-step process. First, he must determine if there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms. SSR 96-7p, 1996 SSR LEXIS 4, at *1-2. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which they limit the claimant's functioning. *Id*. at *2. This requires the ALJ to consider the claimant's statements about pain and other symptoms, along with the rest of the relevant evidence in the case record, and reach a conclusion about the individual's credibility. *Id*. at *2-3.

"The ALJ alone decides issues of credibility and this Court must give great deference to those decisions, as the ALJ was able to observe the witness's testimony and demeanor at the hearing." Lloyd, 2013 U.S. Dist. LEXIS 25794, at *12 (*citing* Gernavage v. Shalala, 882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995); Serra v. Sullivan, 762 F. Supp. 1030, 1034 (W.D.N.Y. 1991).

Darby testified to a variety of symptoms including: difficulty with lifting, carrying,

standing or sitting, and symptoms of depression, such as dysphoric moods, feelings of hopelessness, fatigue, social withdrawal, excessive apprehension, and occasional suicidal ideation. (R. 16.) ALJ Grow found that Darby's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, but her statements concerning intensity, persistence, and limiting effects of these symptoms were not entirely credible. (R. 16.) The ALJ accepted Darby's testimony that her limitations prevented her from performing the physical demands of her past relevant work. (R. 17.) However, he found the alleged limitations relating to her right knee were not consistent with the record, including statements she had made to medical providers. *Id*.  The ALJ also referred to the record in finding Darby's limitations from asthma and depression were not as severe as she alleged. (R. 18.) In short, the ALJ did not, as Darby claims, base his credibility assessment solely on his own RFC finding. Upon a review of the record, this Court finds no reversible error in the ALJ's assessment of Darby's credibility.

14.  Finally, Darby contends the Commissioner did not meet his burden of proof at step five of the sequential evaluation because the ALJ incorporated an erroneous RFC determination into the hypothetical he presented to the vocational expert. Because this Court has rejected Darby's claims of error with regard to the RFC assessment, it also finds the ALJ did not err when he based a hypothetical question on that assessment. Salmini v. Comm'r of Soc. Sec., 371 Fed. Appx. 109, 114 (2d cir. 2010) (*citing* Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983)).

****

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings

(Docket No. 11) is GRANTED;

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 13) is DENIED;

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: September 14, 2013
       Buffalo, New York

                                                  /s/William M. Skretny
                                                  WILLIAM M. SKRETNY
                                                         Chief Judge
                                         United States District Court